1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CYNTHIA WILEY,

      Plaintiffs,

    vs.

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

      Defendants.

Case No.: 11-cv-2012-YGR

**ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Cynthia Wiley ("Plaintiff" or "Wiley") filed this action seeking judicial review of an administrative law judge's ("ALJ") finding that she is not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301-1397. The parties have each filed for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff argues that the ALJ erred in holding that, despite her impairments and the limitations they impose, she possesses the capacity to work as a housekeeper and is therefore not "disabled" within the meaning of the Social Security Act. Defendant Commissioner ("Defendant") contends summary judgment in its favor is appropriate because the ALJ made no reversible errors of law and substantial evidence supported the ALJ's

United States District Court
Northern District of California

1    decision.

2          Having carefully considered the papers submitted and the pleadings in this action, and for the

3    reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgment and

4    **GRANTS** Defendant's Cross-Motion for Summary Judgment.

5    **I.      FACTUAL AND PROCEDURAL BACKGROUND**

6          Wiley initially filed her claim for Title XVI Supplemental Security Income ("SSI") and Title

7    II Social Security Disability Insurance ("SSDI") benefits on or around November 15, 2007, claiming

8    she had been disabled since March 13, 2002, as a result of various shoulder, back, and knee

9    problems.  (Dkt. No. 13, "Plaintiff's Motion for Summary Judgment ("Plf.'s Mot.") at 6.)  Prior to

10   the onset of her alleged disability, Plaintiff worked as a housekeeper.  (Record of Proceedings

11   Certified June 2, 2011 ("Record") at 46.)  However, in 2002, injuries to her back and wrist forced her

12   to stop working after she fell while cleaning a hotel room.

13         The Social Security Administration ("SSA") denied her claim on April 10, 2008, and she

14   timely filed a Request for Reconsideration on or around May 15, 2008. The SSA affirmed the denial

15   and informed Wiley of the decision on July 11, 2008.  On August 20, 2008, she requested a hearing

16   before an administrative law judge ("ALJ").  The ALJ conducted the requested hearing on

17   September 28, 2009.  Plaintiff was 49 years and 5 months of age at the time of the hearing.  On

18   December 17, 2009, the ALJ issued a decision unfavorable to Wiley, and she filed the instant action

19   seeking judicial review on April 25, 2011.

20   **II.     Discussion**

21         This Court has jurisdiction under 42 U.S.C. § 405(g).  The Court may reverse the ALJ's

22   decision only if it "contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*,

23   495 F.3d 625, 630 (9th Cir. 2007) (citations omitted).  Substantial evidence is "such relevant

24   evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burch v.*

25   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  It is "more than a mere scintilla but less than a

26   preponderance."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Where the evidence

27   is susceptible to more than one rational conclusion, the Court must uphold the ALJ.  *Burch*, 400 F.3d

28   at 679.

1

**A.  Five-Step Disability Determination Process**

2        SSA uses a five-step sequential framework to determine whether a claimant is disabled.[1]  At

3   step one, the ALJ determined that Plaintiff was not engaged in "substantial gainful activity" during

4   the relevant timeframe.  (Record at 26.)  At step two, the ALJ determined that Plaintiff "has the

5   following severe impairments: mild cervical spondylosis, mild osteophytes of lumbar spine, mild

6   degenerative changes of right shoulder and bilateral knees, [and] obesity."  (*Id.* at 26-27.)  At step

7   three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that

8   meets or medically equals one of the listed impairments in [the regulations.]"  (*Id.* at 27.)

9   Consequently, before proceeding to step four, the ALJ made a determination regarding Plaintiff's

10  residual functional capacity ("RFC"), taking into account "descriptions and observations of

11  [Plaintiff's] limitations from [her] impairment(s), including limitations that result from [her]

12  symptoms, such as pain[.]"  20 C.F.R. § 416.945(3).  The RFC determination held that Plaintiff

13  retained the capacity to:

14         lift and carry 20 pounds occasionally, [10] pounds frequently; stand/walk 6 hours out
           of an 8-hour workday; sit 6 hours out of an 8-hour workday; occasionally climb stairs
15         and ramps, but never climb ropes, ladders, [or] scaffolds; occasional[ly] balance[],
           stoop[], kneel[], crouch[], and crawl[]; reach[] in all directions and overhead . . .
16         occasionally bilaterally; and . . . frequent[ly] handl[e]/finger[]/feel[].

17

18  (*Id.* at 27-31.)  At step four, relying on the opinion of a vocational expert, the ALJ held that Wiley

19  could perform her past job as a housekeeper and therefore was not disabled within the meaning of

20  the Social Security Act.  The ALJ did not proceed to step five, which would have required

21

22  ───────────────────
         [1] The five steps are:

23         1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not
    disabled within the meaning of the Social Security Act. If not, proceed to step two.  *See* 20 C.F.R. §
24  416.920(b).

           2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not
25  disabled. *See* 20 C.F.R. § 416.920(c).

           3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R.
26  Part 220, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four.  *See* 20
    C.F.R. § 416.920(d).

27         4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is
    not disabled. If not, proceed to step five.  *See* 20 C.F.R. § 416.920(e).

28         5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the
    claimant is disabled. *See* 20 C.F.R. § 416.920(f).

United States District Court
Northern District of California

United States District Court
Northern District of California

determining whether the claimant could perform other work besides past jobs, taking into account her residual functional capacity, age, education, and work experience.  (*Id.* at 26); 20 C.F.R. § 404.1560(b)(3).

Plaintiff argues that the ALJ erred in several ways.  First, he failed to base his residual functional capacity on substantial evidence.  Second, he failed to grant controlling weight to the medical opinion of Plaintiff's treating doctor.  Third, he failed to provide clear and convincing reasons for finding her testimony lacked credibility.  Fourth, he relied on vocational expert testimony that was purportedly inconsistent with the Dictionary of Occupational Titles.  Finally, he applied the Medical-Vocational Guidelines in an impermissibly mechanical fashion.  The Court takes each argument in turn.

**B.  The ALJ's Residual Functional Capacity Determination**

In making his RFC determination, the ALJ examined several medical opinions, records from Alta Bates Summit Medical Center, and Plaintiff's own testimony.  (Record at 26-31.)  The medical opinions in the record were provided by: Dr. Herring, Wiley's treating physician; Dr. Pon, a consultative examiner for the SSA; and Dr. Tambellini, an SSA doctor who only reviewed Wiley's medical records.  (*Id.* at 257-273.)  Dr. Herring's RFC assessment favored a finding of disability, but the ALJ chose to accord it "little weight."  (*See id.* at 30, 257-263.)  Similarly, Plaintiff testified to having numerous severe impairments, but the ALJ found her testimony regarding the "intensity, persistence, and limiting effects" of her impairments lacking in credibility.  (*Id.* at 28.)  By contrast, the ALJ accorded "great weight" to the opinion of Dr. Pon, whose opinion noted less severe impairments than that of Dr. Herring, and adopted that RFC assessment.  (*Id.* at 29.)  As support for his RFC determination, the ALJ cited "the overall record, including the opinion evidence of the consultative examiners and treatment record."  (*Id.* at 31.)

Plaintiff argues that the ALJ committed reversible legal error both by: (1) according Dr. Herring's opinion little weight; and (2) by finding her testimony not credible.  The Court first addresses these arguments, then considers Plaintiff's other attack on the ALJ's RFC determination.

*1.  Weight Given to Wiley's Treating Physician*

At the time of the hearing, Dr. Herring had been Wiley's treating physician for at least five

United States District Court
Northern District of California

1    years and was seeing her on a monthly basis.  (Record at 57.)  He saw her a number of times,

2    prescribed her medications, and ordered x-rays of her back, which revealed mild cervical spondylosis

3    and mild osteophytes.  (*Id.* at 331-40.)  On January 29, 2008, in connection with Wiley's SSA claim,

4    Dr. Herring provided a medical assessment of Plaintiff's RFC.  (*Id.* at 257-262.)  The assessment

5    indicated that Plaintiff had degenerative arthritis in her knees, shoulder, and back.  (*Id.* at 257, 261.)

6    Because of those impairments and the resulting chronic pain, Herring found Plaintiff unable to work,

7    with the following capacitive limits in an eight-hour workday: standing/walking for zero to two

8    hours total; sitting for zero to two hours total; lifting no amount of weight; and never crawling,

9    crouching, or reaching.  (*Id.* at 260-61.)  He also commented that Plaintiff needed to be "stationary"

10   in order to avoid aggravating her joints and that she had been prescribed "medicines that can impair

11   judgment."  (*Id.* at 261-62.)

12        Dr. Pon examined Plaintiff on March 18, 2008, and thereafter compiled a report on Plaintiff's

13   residual functional capacity.  (*Id.* at 264.)  Dr. Pon's report echoed Dr. Herring's diagnostic

14   impressions, noting: cervical arthritis; cervical spondylosis; chronic bilateral shoulder pain, probably

15   stemming from degenerative arthritis or possibly bursitis or arthritis/a tear in the rotator cuff; chronic

16   bilateral hand pain and numbness; chronic back pain, probably stemming from spinal disc disease

17   and/or degenerative changes of the spinal facet joints; and chronic bilateral hip and knee pain

18   consistent with the diagnosis of degenerative arthritis.  (*Id.* at  265-66.)  However, Dr. Pon's report

19   differed markedly from Dr. Herring's in its assessment of Wiley's residual functional capacity.  (*See*

20   *id.* at 266.)  He opined that she could: stand/walk four hours out of an eight-hour workday; sit for six

21   hours out of an eight-hour workday; lift and carry twenty pounds occasionally and ten pounds

22   frequently; occasionally crouch, kneel, squat, climb ladders, and crawl; and reach bilaterally

23   "occasionally."  (*Id.* at 266.)  Dr. Pon further noted that although Plaintiff told him she required a

24   cane to walk, she forgot to bring her cane to the examination.  Nevertheless, Dr. Pon noted, she

25   "ambulate[d] well with no ambulatory aid.  Gait was stable.  Gait velocity and stride length were

26   slightly less than normal.  There was no limp."  (*Id.* at 265.)  Lastly, Dr. Pon indicated that Wiley

27   told him operative intervention had been recommended for her wrists, but that she had declined such

28   treatment.  (*Id.*)

United States District Court
Northern District of California

On April 8, 2008, Dr. Tambellini also issued a report regarding Plaintiff's residual functional capacity. (*Id.* at 269-73.) Dr. Tambellini based the report solely on his examination of Plaintiff's records. (*Id.* at 269) In the report, Dr. Tambellini opined that Wiley had the capacity to lift twenty pounds occasionally and to lift ten pounds frequently; the capacity to stand and/or walk for a total of six hours in an eight-hour workday; and to sit for a total of about six hours in an eight-hour workday. (*Id.* at 270-71.) He noted that she had a limited capacity for reaching in all directions, stating that her ability to reach bilaterally was limited to "occasional." (*Id.* at 271.) In the Additional Comments section of his report, Dr. Tambellini stated that Plaintiff was, "[p]artially credible with objective findings not fully supportive of subjective complaints." (*Id.* at 273.)

In addition to these medical opinions, the ALJ also considered records from Alta Bates Medical Center where Plaintiff visited the emergency room on several occasions. (*Id.* at 184-253.) The notes from these visits indicate that Plaintiff was seeking medication refills but express skepticism regarding Plaintiff's stated pain. (*See, e.g.*, *id.* at 199.) In one instance, Plaintiff reported level ten pain on a scale of one to ten, but the clinical note stated that her "pain doesn't match [her] body language." (*Id.* at 212.) At the same visit, Wiley was found outside talking and laughing with another person, smiling with a calm face, and in no apparent distress. (*Id.*) She also gave vague answers to questions about who prescribed her medicine, contradictorily stating that she had no doctor and that her doctor was retiring. (*Id.*) On another occasion, Wiley reported dizziness and level ten back pain, but the clinical note stated that she had a steady gait, conversed easily, and was in no apparent discomfort. (*Id.* at 199-200.)

In view of the Alta Bates Records and the opinions of Drs. Pon and Tambellini, the ALJ found Dr. Herring's RFC records to be "surprisingly brief in nature and with scant support," and his opinion to be "unpersuasive [and] inconsistent with the overall record." (*Id.* at 30.) As a result, the ALJ "granted little weight [to] his opinion." (*Id.*) In making this decision, the ALJ specifically noted that "other treatment records from Alta Bates do not support claimant's alleged disabling impairments." (*Id.*) The ALJ further stated that the remaining treatment records "consist primarily of triage and continuing care notes reflecting the claimant's complaints . . . along with requests for medication refills, but no other treatment modalities or medical opinions." (*Id.*) Lastly, the ALJ

noted that "[t]reatment and progress note[s] depict an individual whose complaints of back and knee pain are ameliorated with pain medication." (*Id.*) Plaintiff nevertheless argues that the ALJ's decision lacked substantial evidence.

### a. "Controlling Weight"

An ALJ may reject a treating or examining physician's opinion that is contradicted by another doctor if the ALJ provides specific, legitimate reasons based on substantial evidence in the record. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *see also* 20 C.F.R. §404.1527(d)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted). The ALJ must do more than offer conclusions; he must set forth his own interpretation and explain why it, rather than the doctor's opinion, is correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Further, an examining physician's report is not "substantial evidence" where the examiner relies on the same clinical findings as the treating physician and differs only in the conclusions drawn. *Orn*, 495 F.3d at 632.

Plaintiff argues the ALJ lacked "substantial evidence" for his decision not to grant Dr. Herring's opinion controlling weight.[2] (Plf.'s Mot. at 10.) She contends that the opinions of Drs. Pon and Tambellini cannot constitute substantial evidence because they rely on the same clinical evidence as Dr. Herring's opinion and differ only in their conclusions regarding her residual functioning capacity. (*Id.* at 11-12.) Plaintiff further contends that substantial evidence does not support the ALJ's finding that Dr. Herring's records are "brief in nature and with scant support." (*Id.* at 12.)

_____

[2] At the administrative hearing and in her Motion, Plaintiff emphasizes that Dr. Herring based his opinion on a treating relationship of roughly five years, whereas Dr. Pon examined Plaintiff for only fifteen minutes. Mot. at 11; Record at 56-57. Although the disparity in time spent with Plaintiff was a valid consideration, it did not by itself require the ALJ to adopt Dr. Herring's opinion instead of Dr. Pon's. To the contrary, Dr. Herring's opinion remained susceptible to the ALJ's scrutiny on the bases provided by law. *See Orn*, 495 F.3d at 632 (holding that an ALJ may discredit a treating physician by providing specific, legitimate reasons based on substantial evidence).

The ALJ provided specific, legitimate reasons for his decision not to accord Dr. Herring's opinion controlling weight. While the opinions of Drs. Pon and Tambellini alone do not amount to substantial evidence, the ALJ also noted that the treatment records from Alta Bates did not support Dr. Herring's assessment. (Record at 30.) For example, Plaintiff's actions on one occasion led to the conclusion that her "stated pain doesn't match body language." (*Id.* at 212.) On another occasion, she was found "conversing easily [and] laughing" despite complaints of extreme pain. (*Id.* at 199.) And on each visit to the emergency room, the clinical notes indicate that Plaintiff could walk without difficulty. (*Id.* at 188, 199, 212, 216, 223.) In conjunction with the opinions of Drs. Pon and Tambellini, these aspects of the record provide "substantial evidence" for the ALJ's decision not to grant Dr. Herring's opinion controlling weight.

        *b.   "Little Weight"*

However, "that a treating physician's opinion is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to *controlling* weight," not that the opinion should be rejected entirely. *Orn*, 495 F.3d at 631-32 (quoting 20 C.F.R. § 404.1527) (emphasis supplied). Treating source medical opinions are still entitled to deference and given appropriate weight considering the factors in 20 C.F.R. § 404.1527: length of treating relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and "other factors," such as a doctor's knowledge of SSA's programs and their evidentiary requirements. *Id.*; 20 C.F.R. § 404.1527.

Here, the ALJ bypassed any explicit weighing process and concluded that Herring's opinion should be granted little weight. Unless the error is harmless, it is cause for reversal. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). An error is harmless only "when it is clear from the record that [it] was inconsequential to the ultimate nondisability determination." *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)) (internal quotations and citations omitted).

In this case, the Court concludes that the ALJ's error was harmless because "the evidence is susceptible to more than one rational interpretation." *Id.* (citing *Burch*, 400 F.3d at 679). Although the extended duration of Dr. Herring's treating relationship and his resulting knowledge about Plaintiff's impairments might support a finding of more than "little weight" under the regulations'

United States District Court
Northern District of California

first two weighing factors, other parts of the regulations point to the opposite conclusion.  For example, the ALJ found Dr. Herring's records lacking in support and his RFC assessment inconsistent with the record at large.  Thus the third and fourth factors favor giving minimal weight to Dr. Herring's opinion.  The record is silent on section 404.1527's other two factors, a doctor's specialty and "other factors," such as knowledge about SSA's disability programs and their evidentiary requirements. 20 C.F.R. § 404.1527(5)-(6).  Because section 404.1527 does not clearly mandate a particular answer, the Court finds that the evidence bearing on the weight of Dr. Herring's opinion was subject to more than one rational interpretation.  *See Tommasetti*, 533 F.3d at 1038.  The Court therefore concludes that the ALJ's failure to state explicitly his weighing of the section 404.1527 factors was harmless error, and that the ALJ's decision to accord little weight to Dr. Herring's opinion is supported by substantial evidence.

### 2. *Credibility Determination of Plaintiff*

Plaintiff argues that the ALJ committed a reversible error of law, contending that none of the aforementioned bases amounts to a "clear and convincing reason" for discounting her testimony.  In the hearing with the ALJ, Wiley testified that she experienced constant pain in her shoulders.  (*Id.* at 50.)  She further testified to experiencing pain in her wrists, particularly when lifting objects, and that she still suffered from the back injury she sustained in 2002.  (*Id.* at 50-51.)  As a result of these injuries, Wiley stated, she was barely able to get out of bed and was forced to limit her activity around the house; she was unable to go to the grocery store herself, dress herself, or exit the bath tub herself.  (*Id.* at 53, 55-56.)  She stated that she could not carry ten pounds of groceries and estimated that she could sit for fifteen to twenty minutes before the onset of severe pain.  (*Id.*)  With regard to medical treatment, Wiley testified that Herring had been her treating doctor for roughly five years and that, at the time of the hearing, she visited him on a monthly basis.  (*Id.* at 57.)  She further stated that her medication gave her nausea, but that she did not take medication for her stomach problems.  (*Id.* at 53.)  In addition to medication, Wiley stated that she used hot baths and massages from her daughter to obtain relief from chronic pain.  (*Id.* at 53-54.)

The ALJ found Wiley's testimony regarding the "intensity, persistence, and limiting effects" of her impairments to lack credibility because of inconsistencies between her testimony and the

United States District Court
Northern District of California

1  overall record.  (*Id.*)  Specifically, the ALJ pointed to the opinions of Drs. Pon and Tamberllini;

2  Wiley's failure to pursue alternate treatment modalities; her indication to Dr. Pon that surgery was

3  recommended for her wrists and her subsequent, contrary testimony that such surgery was only

4  discussed, not recommended; her indication to Dr. Pon that she required a cane despite failing to

5  bring the cane to her examination and "ambulate[d] well" without it; treatment notes from Alta Bates

6  indicating that her "pain [didn't] match body language"; and a lack of support in the record for her

7  complaints regarding side effects from her medication.  (*Id.* at 30-31.)

8        To find Plaintiff's testimony unreliable, the ALJ was required to make "a credibility

9  determination with findings sufficiently specific to permit the court to conclude that the ALJ did not

10  arbitrarily discredit claimant's testimony."  *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v.*

11  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)) (internal quotations omitted).  Where, as here, the ALJ

12  finds that Plaintiff has produced evidence of an underlying impairment or impairments that could

13  reasonably be expected to produce some degree of symptoms, the ALJ "can reject the claimant's

14  testimony about the severity of her symptoms only by offering specific, clear and convincing reasons

15  for doing so."  *Id.* (quoting *Smolen*, 80 F.3d at 1281, 1283-84) (internal quotations omitted).  In

16  deciding credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of

17  credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

18  concerning the symptoms, and other testimony by the claimant that appears less than candid; (2)

19  unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

20  treatment; and (3) the claimant's daily activities."  *Id.*  The Court cannot engage in second-guessing

21  where the ALJ's credibility finding "is supported by substantial evidence."  *Id.* (citing *Thomas*,  278

22  F.3d at 959) (internal quotations omitted).

23        Plaintiff first argues that the ALJ erred in regarding certain parts of the record as inconsistent

24  with her testimony.  Specifically, she contends that the ALJ should not have considered her failure to

25  bring a cane to her examination with Dr. Pon to be inconsistent wither her stated need for the cane.

26  Instead, she contends, the ALJ should have inferred that she merely forgot to bring her cane because

27  her medication makes her forgetful.  Plaintiff similarly contends that the ALJ should have inferred

28  that her medication, which also allegedly causes weakness, dizziness, and shortness of breath when

1   climbing stairs, prevented her from climbing back up the stairs in order to retrieve it.  Finally,

2   Plaintiff contends that the ALJ erred in considering her testimony, that operative intervention for her

3   wrists had been "discussed," to be inconsistent with Dr. Pon's report that it had been

4   "recommended."

5          None of these arguments is persuasive because the relevant facts are susceptible to more than

6   one plausible interpretation.  Although the ALJ might have made the inferences Plaintiff presents, he

7   was in no sense obligated to do so, and he did not commit any error in drawing other, legitimate

8   inferences.  *See Tommasetti*, 533 F.3d at 1039 (citing *Thomas*, 278 F.3d at 959).  Where the ALJ

9   made one rational interpretation among several, the Court may not reverse him.  *See Andrews v.*

10  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Tommasetti*, 533 F.3d at 1038.

11         Plaintiff further argues that the ALJ failed to consider the entire record in determining that

12  her testimony was not credible.  In particular, Plaintiff asserts that the ALJ ignored consistent

13  statements by an SSA field officer, statements of Plaintiff herself, the opinions of Drs. Pon and

14  Tamberllini, and the records of Dr. Herring.  In making this argument, Plaintiff relies on *Gallant v.*

15  *Heckler*, in which the Ninth Circuit held that an ALJ had impermissibly neglected to consider aspects

16  of the record.  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  That case is not analogous to the

17  one at bar.  In *Gallant*, the ALJ relied on the reports of two *non-examining* physicians to the

18  exclusion of all other evidence in the record without providing any "clear and convincing" reason for

19  doing so.  *Id.* at 1454.  By contrast, the ALJ's decision here was based in part on the report of an

20  examining doctor, and the ALJ explained why the opinion of said doctor was entitled to great weight.

21  Further, the ALJ identified a number of inconsistencies in other portions of the record which cast

22  doubt on Plaintiff's credibility.  The Court finds these inconsistencies between Plaintiff's testimony

23  on one hand, and an examining doctor's opinion and several notes from treating sources on the other

24  hand, to constitute clear and convincing reasons for discounting Plaintiff's testimony.

25         Finally, Plaintiff contends the ALJ erred in partially basing his credibility determination on

26  the absence of any attempt to seek physical therapy or other treatment modalities.  At the hearing,

27  Plaintiff stated that she could not afford additional treatment but that she had attended physical

28  therapy while worker's compensation paid for it.  (Record at 54.)  The Court agrees that discounting

United States District Court
Northern District of California

1    Plaintiff's testimony on this basis was improper.  A claimant's failure to seek treatment despite

2    complaints of disabling pain may be probative because "a person's normal reaction is to seek relief

3    from pain, and because modern medicine is often successful in providing some relief."  *Orn*, 495

4    F.3d at 638.  But one "good reason" for not seeking treatment is where a claimant lacks the funds to

5    obtain treatment.  *Id.*  In the present case, it is uncontroverted that Plaintiff undertook physical

6    therapy in connection with her worker's compensation claim until the point where the claim no

7    longer covered the cost.  (*See* Record at 54-60.)  Further, as Herring's notes indicate, Plaintiff

8    attempted to ameliorate her alleged pain via transcutaneous electrical nerve stimulation ("TENS").

9    (*Id.* at 296.)  It is also apparently uncontested that Plaintiff sought to avoid physical activities that

10   would exacerbate her alleged pain and made frequent use of home remedies like hot baths.  (*Id.* at

11   54.)  The fact that Plaintiff participated in physical therapy when the costs were minimized and

12   sought to use home remedies thereafter is, without more, not probative to the question of why

13   Plaintiff failed to seek physical therapy or other treatment modalities.  The ALJ thus erred in citing

14   Plaintiff's failure to seek additional forms of treatment as a reason for discounting her testimony.

15          However, because the ALJ presented a number of other clear and convincing reasons for

16   discrediting Plaintiff, his error in this respect is not cause for reversing his decision. *See Tommasetti*,

17   533 F.3d at 1038 (stating that a court may not reverse an ALJ's holding on the sole basis of a

18   harmless error).

19          *3.   The ALJ's Consideration of Plaintiff's Non-Exertional Limitations*

20          Plaintiff argues the ALJ's RFC determination failed to give proper consideration to her non-

21   exertional limitations.  She makes this argument primarily by analogizing to *Tackett v. Apfel*, 180

22   F.3d 1094 (9th Cir. 1999).  The comparison is unpersuasive because of the significant differences

23   between that case and the one at bar.  In *Tackett*, the Ninth Circuit held the ALJ committed reversible

24   legal error because the ALJ failed to take into account a claimant's non-exertional limitation in

25   making his residual functional capacity determination.  *Tackett*, 180 F.3d at 1102-1104.  Plaintiff

26   contends the ALJ here similarly failed to take into account a non-exertional limitation, namely that

27   she must remain stationary to avoid aggravating her joints.  But the only bases in the record for this

28   purported a limitation are Dr. Herring's opinion and Plaintiff's own testimony.  The ALJ considered

each and, citing substantial evidence in the record, rejected each.  The Court therefore finds that the ALJ included all relevant limitations in his RFC determination.  Further, because the ALJ: (1) provided clear and convincing reasons for discounting the opinion of Dr. Herring and the testimony of Plaintiff; and (2) explained why he placed more reliance on Dr. Pon's opinion, the Court finds that the ALJ's RFC determination was supported by substantial evidence and without reversible legal error.

### C. The ALJ's Reliance on Vocational Expert Testimony

Plaintiff argues that the ALJ committed reversible error in relying on the vocational expert's testimony.  At the hearing, the ALJ inquired of the expert whether an individual capable of "a full range of light work" could perform any of Plaintiff's past jobs.  (Record at 57-58.)  The vocational expert answered affirmatively that such an individual could work as a housekeeper.  (*Id.* at 58.)  Next, the ALJ inquired whether an individual, age 41 at the date of onset, with the same residual functional capacity and education as Plaintiff could perform any of Plaintiff's past jobs.  (*Id.* at 58-59.)  The expert again answered that such a person could work as a housekeeper.  (*Id.* at 59.)  Based on  the expert's answers, the ALJ determined that the Plaintiff could work as a housekeeper and therefore was not disabled.  (Record at 31.)

Plaintiff presents two arguments against the ALJ's reliance on the vocational expert's testimony.  First, Plaintiff contends that the ALJ failed to pose accurate hypotheticals to the expert, and that the expert's testimony is therefore moot.  Second, Plaintiff contends that the vocational expert's testimony cannot be relied on because it deviated from the *Dictionary of Occupational Titles* ("*DOT*") and neither the ALJ nor the expert explained such deviation.  The Court addresses each argument in sequence.

### 1.  Sufficiency of Hypotheticals

An ALJ may rely on the testimony of a vocational expert only if the hypotheticals posed to the expert encompass all of a claimant's limitations.  *Andrews*, 53 F.3d at 1044 (citing *Magallanes*, 881 F.2d at 756.  Plaintiff argues the ALJ failed to pose accurate, complete hypotheticals to the vocational expert because he "assumed that Ms. Wiley had the ability to stand and/or walk for six hours and sit for six hours of an eight-hour competitive workday."  (Plf.'s Mot. at 21.)  This

United States District Court
Northern District of California

13

assumption, contends Plaintiff, failed to take into account her additional limitations, such as her inability to concentrate because of ongoing pain, her need to alternate between sitting and standing, and her need to lie down frequently.  (*Id.*)  During cross-examination by Plaintiff's attorney, the vocational expert acknowledged that any of these infirmities would prevent Plaintiff from working as a housekeeper.  Consequently, Plaintiff argues, the vocational expert would have found Plaintiff unable to work as a housekeeper if not for the ALJ's allegedly inaccurate hypotheticals.

However, the only sources of support for these additional limitations are Herring's opinion and Plaintiff's own testimony.  Neither Pon nor Tambellini noted that Plaintiff had any of the aforementioned limitations, and the Alta Bates records are silent on such allegations.  Plaintiff's argument thus hinges solely on two sources of support which the ALJ expressly discredited.  The Court has already found the discounting of those sources to be free of reversible legal error and supported by substantial evidence.  *See supra* Part II.B.  The Court therefore finds the hypotheticals free of error.

### 2.   Consistency with the Dictionary of Occupational Titles

Plaintiff argues the ALJ erred by relying on the vocational expert's testimony that she could return to housekeeping work.  Before an ALJ can rely on the testimony of a vocational expert, the ALJ must first inquire as to whether there exists a conflict between the expert's testimony and the *Dictionary of Occupational Titles*.  *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).  If the ALJ determines a conflict exists, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*," or the O*NET definitions that have now supplanted them.  *Id.*[3]

Plaintiff characterizes the vocational expert's testimony here was a "deviation from the *DOT*" and O*NET definitions that neither the expert nor the ALJ explained.[4]  She argues that she does not

---

[3]  Plaintiff contends that the more recent development of the Occupational Information Network ("O*NET") definitions has supplanted the DOT for use by the SSA.  Defendant does not contradict this assertion.  Thus, the Court assumes that DOT and O*NET are interchangeable for purposes of this decision.

[4]  In making this argument, Plaintiff relies on the O*NET job definition for a housekeeper.  O*NET Online Summary Report for 37-2012.00 Maids and Housekeeping Cleaners, http://www.onetonline.org/link/summary37-2012.00 (Updated 2010) ("O*NET Housekeeping Definition").

United States District Court
Northern District of California

1    possess an ability listed as a requirement for housekeeping work, *i.e.*, "Extent flexibility - the ability

2    to bend, stretch, twist, or reach with your body, arms, and/or legs." (O*NET Housekeeping

3    Definition.)  However, there does not appear to be any discrepancy between the vocational expert's

4    testimony and the plain language of O*NET.  O*NET does not indicate how often a housekeeper

5    must reach bilaterally, and Plaintiff has not presented any authority that the mere listing of "extent

6    flexibility" means that a worker must reach bilaterally more frequently than "occasionally," the

7    capacity she was determined to have.  Because Plaintiff has not actually identified any discrepancy

8    between the vocational expert's testimony and the O*NET Housekeeping Definition, the Court finds

9    the ALJ and the vocational expert's actions to be without reversible legal error.

10              **D. Medical-Vocational Guidelines**

11              Finally, Plaintiff contends that the ALJ committed legal error in failing to accurately apply

12   the Medical-Vocational Guidelines ("Guidelines") at 20 C.F.R. Part 404, Subpt. P, App. 2.  First,

13   Plaintiff contends, the ALJ mistakenly considered her age at the date of onset, 41, instead of her age

14   at the time of the hearing, 49 years and 5 months.  Plaintiff further argues that if the ALJ had used

15   her age at the time of hearing, he would have had to place her in the "approaching advanced age"

16   category because she was within "a few months" of reaching that category.  *Id.*  20 C.F.R. section

17   416.963 states that the Administration:

18          [W]ill not apply the age categories mechanically in a borderline situation.  If you are
19          within a few days to a few months of reaching an older age category, and using the
            older age category would result in a determination or decision that you are disabled,
20          we will consider whether to use the older age category after evaluating the overall
            impact of all the factors of your case.
21

22    20 C.F.R. § 416.963.  According to Plaintiff, but for these mistakes, the ALJ would have found

23   Plaintiff disabled by applying the Guidelines in 20 C.F.R. § 404, Subpt. P, App. 2; Rule 201.12.

24              Plaintiff's argument is flawed for three reasons, even assuming that 49 years and 5 months is

25   "within several months" of age 50.  First, the ALJ *never applied* the Guidelines: instead, he ceased

26   his analysis at step four upon finding that Plaintiff was "not disabled" because she could perform

27   prior work as a housekeeper.  (*See* Record at 31.)  The Guidelines are merely one way for the SSA to

28   demonstrate that a claimant can perform work that exists in significant numbers in the national

United States District Court
Northern District of California

15

economy, which becomes necessary only at step five. *See Tackett*, 180 F.3d at 1099. The ALJ thus made no error in failing to apply the Guidelines at all, much less in failing to apply them in the manner Plaintiff contends would have been appropriate. *See Bowen v. Yuckert*, 482 U.S. 137, 180 n.14 (1987). Second, even if the ALJ did choose to apply the Guidelines, they did not *require* him to classify Plaintiff within the "approaching advanced age" category; the guidelines require only that the ALJ consider doing so. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). Third, Plaintiff cites to the portion of the guidelines for *sedentary* work, a classification more restrictive than light work. *See* 20 C.F.R. § 404, Subpt. P, App. 2, Rule 200.00. However, the ALJ found Plaintiff capable of performing housekeeping work, a light work position, and the relevant portion of the guidelines for individuals "approaching advanced age" who can perform light work mandates a finding *against* a claimant. *See* 20 C.F.R. § 404, Subpt. P, App. 2, Rule 202.13. Thus, even if Plaintiff should have been regarded as "approaching advanced age," the ALJ would have concluded that Plaintiff was not disabled. The Court therefore rejects Plaintiff's argument and finds that the ALJ made no error in not considering the Guidelines.

**E.  CONCLUSION**

For the foregoing reasons, the Court hereby **DENIES** the Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.

This Order terminates Dkt. Nos. 13 & 15.

**IT IS SO ORDERED.**

Dated:  September 13, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**